Peter R. Burton

*vs.*

Myers B. Vessels.

Sussex, March T. 1885.

*Specific performance.*

1. Specific performance cannot be decreed where it has become impossi--
   ble to perform the terms of the contract.

2. In order to entitle a complainant to a decree for specific performance,
   he must prove the contract as stated by himself.

Bill for specific performance.—Polly Vessels, the mother of the complainant, and of the defendant also, by a second marriage, died in 1833 intestate, leaving to survive her as her heirs at law six children, to wit: Benjamin Burton, John H. Burton, David Burton, Peter R. Burton, the complainant, and Myers B. Vessels, the respondent. Subsequently, about the 16th day of March, 1855, proceedings were instituted in the orphans' court for the division of her real estate, under the intestate laws of the State existing at the time of her death, among her heirs at law.

The bill states that the complainant accepted lots 1, 2, 3 and 4 of the real estate of his mother, and entered into three recognizances therefor for the respective sums of $395.25, $65.25, and $504.54, with interest from the 20th day of September, 1855, with Benjamin Burton and John H. Burton as his sureties therein. The complainant states that he did not enter into a recognizance for lot No. 1, because it, being valued at $945, was assigned him by the court in part payment of his share of his said mother's estate.

It seems that Polly Vessels was entitled to certain real estate in Kent County, which was accepted by Benjamin Burton, who entered into a recognizance on the 20th day of September, 1855, in the sum of $2,430.73 on the acceptance thereof, in which said recognizance the said Myers B. Vessels was entitled as one of the heirs at law of his mother.

The complainant states that Vessels' share in the three recognizances entered into by the complainant on his aforesaid acceptance of the aforesaid four lots of land of his said mother was $263.19$\frac{3}{11}$. The share of Vessels in the recognizance entered into by Benjamin Burton on the acceptance of the lands of Polly Vessels in Kent County is stated in the bill to be $662.92$\frac{7}{11}$.

The complainant states that, shortly after the said assignment of said lots of land, by the said court, to him, in the month of September, 1855, and possibly within said month of September, a verbal contract for the sale of said tract No. 1 by the complainant to the defendant was entered into by and between them, the terms whereof he states to be as follows:

" Your orator sold said lot No. 1 to this defendant for the sum of $2,000, which was to be paid as follows: the sum of $263.19$\frac{3}{11}$, the aggregate amount of the shares of said defendant in the aforesaid three recognizances, was to be paid by the entry of satisfaction by the defendant on his shares of and in said three recognizances; that your orator, who had at that time sold the other three allotments numbered 2, 3 and 4 for larger sums than he had accepted them at, would allow said defendant the one sixth part of the excess of the price for which he sold them, over the sums at which he had accepted them, costs of assignment being first deducted, and also the one sixth-part of $1,055, being the amount which he had made in the sale of tract No. 1 to this defendant."

The complainant states that it was further agreed in said verbal contract that he would accept, in part payment of the sum of $2,000, purchase money as aforesaid of said lot No. 1, an assignment from the defendant of his share,—to wit: $662.92$\frac{7}{11}$,—in the recognizance of Benjamin Burton, entered into by the latter on the 20th day of September, 1855, for $2,430.73, on the acceptance of the lands of Polly Vessels.

Complainant also states that he has been ready, ever since the making of such verbal contract, to execute and perform his part thereof, by the execution and delivery of a good and

sufficient deed by him of said lot No. 1 to said defendant, and in his bill tenders himself ready to perform the same ; that he has, from time to time and on several occasions, called on the defendant to perform his part of said contract, and urged him to prompt and definite action in the matter·; but the defendant has as often put him off with excuses and promises, until he finds no settlement of this long standing affair can be made except by proceedings in the court of chancery. He also states that the defendant went into the possession of said lot No. 1 shortly after the making of said verbal contract, under and by virtue of said verbal contract, and in no other manner, and by virtue of no other agreement or contract, and solely with the view to the said parol contract being performed, and has ever since continued in possession thereof and thereunder, receiving the rents and profits of the same. He also states that the defendant has not entered satisfaction ·on the record of said three recognizances for his shares therein, nor has he assigned to him, the complainant, his, the defendant's, share in the recognizance of the said Benjamin Burton, but on the contrary did, on the 24th day of November, 1855, ·enter satisfaction on his share in said recognizance.

The complainant in his said bill aggregates the amounts which by the contract he was to allow the defendant at $1,253.68$\frac{12}{33}$, which, being deducted from $2,000, leaves a balance of $746.31$\frac{14}{33}$.

The prayers of the complainant are as follows :

" 1. That the said defendant may be decreed by the chancellor specifically to perform his said contract, in every particular, as set out and stated in the bill of complaint.

" 2. That said defendant may be ordered by the decree of the chancellor to enter satisfaction for and on his shares in said three recognizances of this complainant in said orphans' court, for $395.25, $65.25 and 504.54, respectively, on the record thereof.

" 3. That the said defendant may be ordered, by the decree of the chancellor, to pay this complainant said sum of $662.92$\frac{7}{11}$, the amount of his, the said defendant's, share in

said recognizance of the said Benjamin Burton, with interest from the date of said recognizance.

" 4.  That the said defendant may be ordered, by the decree of the chancellor, to pay this complainant said sum of $746.31$\frac{14}{33}$, the difference between the contract price for said tract of land and $1,253.68$\frac{19}{33}$, the aggregate amount of the aforesaid sums of $263.19$\frac{3}{11}$, $327.56$\frac{2}{3}$, and $662.92$\frac{7}{11}$, with interest on said sum of $746.31$\frac{14}{33}$ from September, 1855.

" 5.  That in case it should appear the said defendant is unable to pay said two sums of $662.92$\frac{7}{11}$ and $746.31$\frac{14}{33}$, with interest as aforesaid, that the said defendant may be decreed by the chancellor to execute and deliver to this complainant a good and sufficient deed conveying back to the said complainant, clear of all incumbrances, the aforesaid tract of land, called lot No. 1, and account for, and pay over to your orator, the sum of $50 for each and every year since he has had such tract in his possession, with interest on each year's rent of $50, or whatever sum the chancellor shall consider proper for an annual average rent of said tract of land; and also account for and pay over to your orator the sum of $500, or whatever sum the chancellor shall consider the value of the timber which said defendant has cut and taken off said land since he went into the possession thereof, with interest from such dates as to the chancellor may seem right and proper."

There is also a prayer for general relief.

*Jacob Moore* for the complainant.

*Caleb S. Layton, Charles F. Richards* and *Robert C. White* for the defendant.

The Chancellor.—The bill in this cause was filed on the 11th day of March, 1878, a period of about twenty-two years after the complainant might have, and ought to have, filed his bill in this court, if he meant to proceed in this court.

It is now impossible to decree a specific performance of the contract set out in the bill, even if such a contract was

proved ever to have existed, because the recognizance of Benjamin Burton, mentioned in the bill and answer, has been satisfied, and was satisfied, almost immediately after it was entered into, and for reasons plainly inferable from the statement in the answer of the defendant, if that answer is to be believed.

The contract set forth in the bill is denied in the answer, and a different contract is therein stated.

An answer under oath not being prayed in the bill, the statements of the answer are not evidence unless those statements operate as admissions by the defendant against his own interests; neither are the statements of the bill evidence of the contract as therein stated, and the specific performance of which by this court is asked. It was necessary for the complainant to establish by proof, clear and satisfactory, the existence of the contract between him and Vessels as stated in the bill.

But one witness in the cause, and he a witness examined by both parties (Benjamin Burton), has testified in relation to any contract between Peter R. Burton and Myers B. Vessels, parties in this cause; and the sum and substance of all he said as a witness was that he heard Myers B. Vessels say, after the commencement of this suit, that he was to give to Peter R. Burton his, Vessels',.interest in his mother's estate for the land. If this testimony is to be considered evidence of such a contract as a court of equity could under any circumstances enforce, the contract would be wholly different from that stated by the complainant in his bill, and different from that stated by the defendant in his answer.

The complainant is bound to prove the contract as stated by himself, and not a different contract, in order to entitle him to his specific performance.

" Specific performance," as applied to contracts, has been defined: "The actual accomplishment of a contract by the party bound to fulfill it; performance of a contract in the precise terms agreed upon; strict performance."

Substantial performance all, I presume, would admit to

be necessary. I will not consider the question whether, in this State, and according to our practice, such a performance as will do justice to the parties under the circumstances, with compensation to the other party when that is required, will be decreed. It is unnecessary to do so. The plaintiff has failed to prove a contract between him and Vessels, as stated by himself; and no contract has been proved which this court, under the circumstances, can enforce by a decree of specific performance.

I shall not, therefore, decree in accordance with any of the prayers of the complainant's bill, but order that the bill be dismissed, with costs.